**In the Matter of Norman E. HALPRIN, Bankrupt.**

**Commercial Sales, Inc., Assignee of Norman E. Halprin, Appellant.**

**United States of America, Claimant-Appellee.**

**No. 13034.**

United States Court of Appeals Third Circuit.

Argued March 21, 1960.

Decided July 1, 1960.

February 2, 1956 notice of lien for these taxes was duly filed and publicly recorded. It is clear that thereafter, pursuant to Sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6321–6323,[1] a lien in favor of the United States attached to and had been perfected against all tangible and intangible property owned or acquired by Halprin. Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56.

Prior to that time in the regular course of business, Halprin had contracted with David D. Doniger & Co. to sew and complete jackets from cut-out material to be supplied by Doniger. This contract provided that Halprin was to receive an agreed price on delivery of the jackets, properly sewn and completed by him. In June 1956, Halprin, needing funds to meet current payrolls, borrowed money from the present claimant, Commercial Sales, Inc., giving as security an irrevocable assignment in writing of all sums to become due in the future under the then executory Doniger contract. Doniger was given written notice of this assignment and consented to it in a writing wherein Doniger expressly promised to pay Commercial all monies which should become due under its contract with Halprin.

Thereafter goods were manufactured and delivered by Halprin and accepted by Doniger. When Halprin became bankrupt Doniger admitted an outstanding obligation to pay $3017.16 for goods thus manufactured and delivered after the assignment. Believing Commercial entitled to this money, the trustee petitioned in the bankruptcy proceeding for authority to disclaim title of this debt owed by Doniger. The referee denied the petition, viewing the debt as property of the bankrupt, to which the government's tax lien against the bankrupt

Irving L. Epstein, Scranton, Pa., for appellant.

George F. Lynch, Washington, D. C., (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Daniel H. Jenkins, U. S. Atty., William D. Morgan, Asst. U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The question on this bankruptcy appeal is whether an outstanding obligation to pay money is property subject to a tax lien filed by the United States against property of the bankrupt, or is property of a third person to which no such lien has attached.

Norman E. Halprin, the bankrupt, was a manufacturer. In January 1956 federal withholding taxes in the amount of $7735.25 were assessed against him. On

---

1. Section 6321 provides that after demand the amount of a taxpayer's overdue taxes "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 6322 provides that the lien arises "at the time the assessment is made". Section 6323 makes the lien invalid "as against any mortgagee, pledgee, purchaser, or judgment creditor" until proper notice of lien has been filed.

had attached. The court below sustained that holding. Commercial, the defeated claimant, has appealed.

We begin our analysis of the foregoing transactions with the assignment and Doniger's promise to pay Commercial pursuant thereto. All relevant transactions occurred in Pennsylvania which has adopted the Uniform Commercial Code. P.S.Tit. 12A. Sections 9–102 and 9–204 of that title sanction and make immediately effective such a creation of a security interest in a right under an executory contract as the parties attempted here. Analytically, the three parties created a new primary obligation by substituting a new promise by Doniger to pay Commercial for Doniger's original promise to pay Halprin. If the original manufacturing contract had been a third-party beneficiary contract, with Doniger promising from the outset to pay Halprin's creditor for Halprin's work, it would have been apparent that the parties had created no obligation to pay Halprin and that Doniger's promise to pay the third-party could not have been reached by any lien filed against Halprin. This is essentially the contractual situation created in this case albeit by a three party arrangement modifying the obligations of an original bilateral contract. For, after Doniger agreed to make payment direct to Commercial, pursuant to Halprin's assignment, Halprin ceased to be entitled even formally, much less beneficially, to receive Doniger's performance. Cf. Taylor v. Stanley Co., 1932, 305 Pa. 546, 158 A. 157. Therefore, if the lien against Halprin had not attached to Doniger's obligation before this third-party agreement, it could not attach thereafter.

This brings us to the critical question in the case. Did the government's tax lien attach to the Doniger-Halprin contract before Commercial entered the picture?

Under the terms of Section 6321 of the Internal Revenue Code of 1954 a duly perfected lien of the United States for taxes attaches to "all property and rights to property, whether real or personal, belonging to" a delinquent taxpayer. Application of this statute involves a two-step inquiry in which both state and federal law must be consulted. State law creates legal interests and defines their incidents, but the ultimate question whether an interest thus created and defined falls within a category stated by a federal statute requires an interpretation of that statute, which is a federal question. Morgan v. Commissioner, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Fidelity & Deposit Co. of Md. v. New York City Housing Authority, 2 Cir., 1957, 241 F.2d 142.[2] Our federal problem is whether, in a wholly executory bilateral contract, valid under state law, a promise to pay for goods or services which are yet to be delivered or performed is property of the promisee within the meaning of this lien-creating statute. We must apply what relevant data we can find, including our understanding of the nature and characteristics of contract rights and property rights at common law, in order to decide what kinds of intangible rights Congress covered in the phrase "property and

---

2. We do not think this analysis is inconsistent with the result recently reached by the Supreme Court in Aquilino v. United States, 1960, 80 S.Ct. 1277. Aquilino involved the competing claims of the federal government and subcontractor to a fixed debt owed the taxpayer-contractor by the owner of a building. There, as in our case, the problem was whether the taxpayer's interest qualified as "property" within the meaning of the federal tax-lien statute. Without deciding this question the Supreme Court remanded the case to the state court to determine whether the taxpayer's interest was full ownership subject to a contractor's lien or only a bare legal title with beneficial ownership in the subcontractor. Insofar as this state law determination would reflect a genuine difference in legal characteristics and not be merely the attachment of a label to an interest the substantial incidents of which were already known to the Court, it was obviously a necessary preliminary to the disposition of any federal question of interpretation of the federal statute which might arise.

rights to property", as it is used in Section 6321.

■■ Of course a debt, an unqualified obligation to pay money, is property of the creditor to which a lien for his taxes may attach. And such a property right usually arises from a contract. This happens when one party to a bilateral contract performs his undertaking and thereby subjects the other party to an obligation to pay for that performance as agreed. E. g., Citizens State Bank of Barstow v. Vidal, 10 Cir., 1940, 114 F.2d 380. But prior to that time, while the contract is wholly executory, the promise to pay is contingent upon whatever performance was bargained for in exchange. Only by conferring an agreed equivalent benefit can the promisee acquire an enforceable right to the promised payment. Thus, it is entirely uncertain whether the conditional promise to pay will ever become unqualified and enforceable. In analogous circumstances contingent obligations are held to be beyond the reach of the ordinary garnishment statute. Hagy v. Hardin, 1898, 186 Pa. 428, 40 A. 804; Stowe v. Breen, 1941, 230 Iowa 1215, 300 N.W. 518; cf. Riegelhaupt v. Russo, 1935, 13 N.J.Misc. 278, 177 A. 878. Nor are such contingent interests viewed as property of a decedent for estate tax purposes. Commissioner of Internal Revenue v. Cardeza's Estate, 3 Cir., 1947, 173 F.2d 19, 23–24, 9 A.L.R.2d 1368. Coming to the actual problem at hand, the Court of Appeals for the Second Circuit has refused to treat a conditional promise to pay in an executory contract as such a right of property as is contemplated by the federal tax lien statute. United States v. Long Island Drug Co., 2 Cir., 1940, 115 F.2d 983; see Beeghly v. Wilson, D.C. N.D.Iowa 1957, 152 F.Supp. 726, 737; United States v. Newhard, D.C.W.D.Pa. 1955, 128 F.Supp. 805, 809. We think the very language of Section 6321, "property * * * belonging to such person" suggests this limitation to rights of payment which have been earned.

It is fair that this distinction be utilized to protect persons in the position of Commercial here. It is eminently appropriate that one who finances property-producing transactions be able to look for security to the acquisitions he is making possible. This justifies the common law rule enabling a purchase-money mortgagee, even one with notice, to prevail over the holder of a prior security interest claiming under an after-acquired property clause. 4 American Law of Property 225 (Casner ed. 1952). The financing of the performance of a manufacturing contract such as we have here is a transaction essentially similar to a purchase-money mortgage; in a real sense, the debt now owed by Doniger was created by funds furnished by Commercial.

In such circumstances, a federal tax lien tends to defeat its ultimate purpose if it impedes the effective assignment of future earnings as security for funds needed to make such earnings possible. The result of such extension of the tax collector's reach is likely to be the destruction of the earning power, and with it the taxpaying power of the burdened business.

From a somewhat different approach, such a lender as Commercial has enriched the taxpayer's estate by the amount loaned to the taxpayer. For this reason, it is not unreasonable to allow it a corresponding security interest in the fruit of the borrowed money, with the government relegated to the borrowing taxpayer's net after the lender is reimbursed. The government has suffered no diminution of the assets which were available to satisfy its tax claim before the loan. In addition, if the tax collector should seize the borrowed funds before their expenditure he could do so.

■ For these reasons we conclude that Doniger's promise to pay for goods if and when delivered, as stated in an executory bilateral contract did not constitute "property * * * belonging to" Halprin, subject to a tax lien under Sec-

tion 6321. Later, when goods were manufactured and delivered to Doniger, his unqualified obligation to pay, as it then came into existence, ran solely to Commercial and thus could not be reached by any lien on Halprin's property.

Accordingly, the judgment will be reversed.