**JFWIRS, LTD., Plaintiff,**

**v.**

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 84–0549.**

United States District Court, M.D. Pennsylvania.

April 23, 1985.

Richard E. Fehling, Marcia A. Binder, Stevens & Lee, Reading, Pa., for plaintiff.

James West, Asst. U.S. Atty., Harrisburg, Pa., Jefferson K. Fox, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

MEMORANDUM

CALDWELL, District Judge.

## I. *Introduction and Background*

Pending at present in this matter are cross motions for summary judgment. At issue is whether the Internal Revenue Service (IRS) may impose a levy upon a liquor license issued by the Commonwealth of Pennsylvania, and sell the same at an execution sale to satisfy a tax claim against the holder of the license.

The parties are in essential agreement on the facts which relate to the present dispute:

1. The taxpayer against whom IRS is proceeding is a corporation known as Guytrak's Scotch N'Sirloin, Inc. (Guytrak's).

2. In 1983 and 1984 the IRS made assessments against Guytrak's for federal employment and unemployment taxes for 1982 and 1983.

3. Between August 12, 1983 and February 27, 1984, Notices of Federal Tax Lien Under Internal Revenue Law on all property and rights to property of Guytrak's were filed in the Prothonotary's Office, Berks County, Pa.

4. On March 8, 1984 IRS notified Guytrak's of the seizure and a levy upon Guytrak's, "property right in and under Pennsylvania Liquor License No. R–2459."

On April 30, 1984, after hearing, we issued a preliminary injunction enjoining the defendant from enforcing its levy or selling the license in question pending disposition of this action. We also directed the defendant to permit the Pennsylvania Liquor Control Board to transfer the license to the plaintiff, and we enjoined the plaintiff from transferring the license until this case is resolved. It appeared that the interests of all litigants would thereby be protected, and reflected our opinion at that time that plaintiff would prevail on the merits in this action. Additional background was stated in our memorandum of April 30, 1984:

The liquor license in question was originally issued to Joseph H. Welsh (Mr. Welsh) who assigned his interest to Guytrak's Scotch N'Sirloin, Inc., (Guytrak's) for $7,500, which sum, apparently, has remained unpaid. Mr. Welsh was also Guytrak's landlord, leasing to them the premises in Muhlenberg Township, Berks County, Pennsylvania which Guytrak's operated as a restaurant. The lease agreement (plaintiff's exhibit 1) provided at article IX for the landlord's option to repurchase the liquor license for $7,500 in the event of termination of the lease.[1]

As of January 23, 1984, Guytrak's owed Welsh Interests, Mr. Welsh's assignee, $84,757.94, which debt included back rent, the unpaid $7,500 for the liquor license, and other obligations. On January 27, 1984, the lease was terminated and Welsh Interests executed its option to repurchase the liquor license which was to be transferred to its nominee, JFWIRS (plaintiff). On February 22, 1984, the liquor license was surrendered to the Pennsylvania Liquor Control Board (PLCB) pending approval of the transfer.

---

[1] On December 11, 1978, Mr. Welsh conveyed his interests in the lease, liquor license and Guytrak's debt to J.F. Welsh Interests, Inc. (Welsh Interests). This is reflected in a new lease executed November 1, 1981 which lease accorded Welsh Interests the repurchase option.

The IRS levy of March 8, 1984 temporarily derailed the liquor license transfer to plaintiff but our order of April 30, 1984 allowed the transfer to occur, subject to being divested should we later determine that the IRS levy and seizure of the license was valid.

## II. *Discussion*

Under Fed.R.Civ.P. 56 summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The material facts are not in dispute in this case so it is appropriate to dispose of it on motion after application of the relevant law. After careful consideration we have reversed our pre-

liminary thoughts in this matter and will grant summary judgment in favor of defendant.

A. *Federal Law Controls Whether the Liquor License Is Property Which Can Be Subjected to a Federal Tax Lien.*

In *1412 Spruce, Inc. v. Commonwealth, Pennsylvania Liquor Control Board,* 504 Pa. 394, 474 A.2d 280 (1984), the Pennsylvania Supreme Court held that a liquor license was a privilege and not property which could be subject to execution and sheriff's sale to satisfy a judgment creditor. Plaintiff strenuously argues that this court is bound by the state court characterization of the liquor license as a "privilege" rather than "property." The distinction is important because 26 U.S.C. § 6321, under which the government asserts its lien on the license, provides, in relevant part, as follows (emphasis added):

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all *property* and *rights to property,* whether real or personal, belonging to such person.

Hence, plaintiff contends that the government's levy upon the license was wrongful because the liquor license, as a privilege, could not be attached under a statute permitting liens only on property.

The United States asserts, on the other hand, that state law controls only the nature and extent of the delinquent taxpayer's legal interests or rights in the property by way of ownership or otherwise. The determination of what constitutes property for the purposes of the federal lien law is controlled by federal law and this court should view the liquor license as property for that purpose.

■ We think the defendant's position is the better one. While some of the language in the cases cited by plaintiff support its position, those cases never reached the issue presented in the instant one. In *Aguilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), the dispute was between third party subcontractors and the government over $2,200 owed by a building owner to the delinquent taxpayer, the general contractor. The government had placed a lien on the fund and the subcontractors claimed that a state statute gave them beneficial ownership of the fund with only bare legal title in the taxpayer. The government contended that the statute created only an ordinary lien in favor of the subcontractors. The United States Supreme Court sent the case back to the New York Court of Appeals to resolve this question of state law. The Court stated:

> The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law for it has long been the rule that "in the application of a federal revenue act, *state law controls in determining the nature of the legal interest which the taxpayer had in the property* ... sought to be reached by the statute." *Morgan v. Commissioner,* 309 U.S. 78, 82, 84 L.Ed.2d 585, 589, 60 S.Ct. 424 [426]. Thus, as we held only two terms ago, Section 3670 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law...." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135, 1140. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property." [citations omitted].

*Id.* at 512–14, 80 S.Ct. at 1280, 4 L.Ed.2d at 1368–69 (emphasis added) (brackets added) (footnotes omitted).

Some of the above-quoted language lends support to plaintiff's position that state law controls the determination of what constitutes property under section 6321. Thus,

the court did state that "both federal and state courts must look to state law" to discover "to what extent the taxpayer had 'property,'" *id.* at 512, 80 S.Ct. at 1280, 4 L.Ed.2d at 1368, but the rest of the opinion speaks about "property rights" and "property interests" as being controlled by state law. It is clear from the context of the opinion that the Court did not intend to be bound by state law definitions of property but only by whether state law conferred any right in the property upon the taxpayer which could then be attached by the government. This rule was established for the obvious reason that federal law has never played a part in creating rights in property while the states have had a "long-established role" in doing so. *Id.* at 513 n. 3, 80 S.Ct. at 1280 n. 3, 4 L.Ed.2d at 1368 n. 3. The Court did not want to impose upon the federal judiciary "the task of attempting to ascertain a taxpayer's property rights under an undefined rule of federal law." *Id.* To have done so may have led to the anamolous situation where federal law said a taxpayer *owned* property and state law said he did not. *Id.*

Our analysis of *Aguilino* can also be applied to another case cited by plaintiff, *Pittsburgh National Bank*, 498 F.Supp. 101 (W.D.Pa.1980), *aff'd.,* 657 F.2d 36 (3d Cir.1981). In that case the taxpayer had borrowed money from the bank, giving the latter a note for the loan. The note provided that the bank would have a lien on the taxpayer's deposits equal to the unpaid balance of the loan. Applying Pennsylvania law, the district court held that the government's levy upon the taxpayer's account with the bank was unsuccessful because the money had already passed by operation of law to the bank on the date of the note's maturity. No affirmative act by the bank was required to extinguish the taxpayer's right to the property and there was nothing to which the government's levy could attach.

*Pittsburgh National Bank* did not turn on the nature of the asset in dispute. No one was contesting whether money was "property." The court looked to state law

only to determine whether the taxpayer owned the money in the account at the time of the notice of the government's levy. Because state law required a negative answer, the levy was ineffective.

*Morgan v. Commissioner,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940) supports our conclusion that state law cannot define what is property for the purposes of federal law. In *Morgan,* the executor of an estate contested the application of the federal estate tax to a power of appointment, claiming that under Wisconsin law it was a special power of appointment and not subject to estate tax as a general power would have been. Concluding that it did not have to decide this issue, the Supreme Court stated:

> State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law.

*Id.* at 80–81, 60 S.Ct. at 426, 84 L.Ed. at 588. There was no question that the two powers of appointment belonged to the decedent and that she exercised them in her will. State law created and recognized this property right in her. Regardless of how state law would have characterized the powers, however, the Supreme Court concluded that under federal law they were taxable in her estate.

Plaintiff is in the same position as petitioner was in *Morgan.* Plaintiff claims that a state law characterization of the asset precludes application of federal law. *Morgan,* establishes, however, that how a state labels a property right is not dispositive of the reach of federal law. We conclude that *1412 Spruce, Inc., supra,* does not control whether the liquor license is "property" within the meaning of section

6321. That is a federal question.[1] *See In re Halprin*, 280 F.2d 407 (3d Cir.1960).

### B. *The Liquor License Is Property Within the Meaning of Section 6321*

 "[A] liquor license issued by the [Pennsylvania Liquor Control Board] is a valuable item of intrinsic worth subject to bargain and sale in the marketplace." *1412 Spruce, Inc., supra*, 504 Pa. at 405, 474 A.2d at 286 (Larsen, J., dissenting) (brackets added). As such, it constitutes property upon which the United States could attach a lien under section 6321.[2]

### C. *The Government's Lien Upon the Liquor License Must Be Limited to $7,500.*

At the time of the notice of levy, plaintiff had exercised an option to purchase the license for $7,500 from the taxpayer, pursuant to Article IX of the lease executed on November 1, 1981. The transfer of the license was subject to the approval of the Liquor Control Board, but no one has suggested that the Board would not have approved the transfer especially since the transfer would only have returned the license, in essence, to the original holder. Under these circumstances, the taxpayer's interest in the license at the time of the notice of levy to the Board was limited to $7,500. Since this was the limit of the taxpayer's property interest in the license under Pennsylvania law of contracts, this is the limit of the government's interest in the license. The value of the license in excess of this amount remains with plaintiff.

We will issue an appropriate order.

### ORDER

AND NOW, this 23rd day of April, 1985, it is ordered that:

1. Defendant's motion for summary judgment shall be and is hereby granted.

2. Plaintiff's motion for summary judgment shall be and is hereby denied.

3. Defendant, United States of America, may execute upon liquor license No. R2459 to the extent of the interest of the taxpayer, Guytrak's Scotch N'Sirloin, Inc., in the license, to wit, the sum of $7,500.

4. Plaintiff shall take all reasonable and necessary steps to permit defendant to execute on the liquor license.

5. The Clerk of Court shall close this file.

---

**1.** State law comes into play here in establishing that Guytrak's owned the liquor license at the time of the IRS levy of March 8, 1984. The license was in the possession of the Pennsylvania Liquor Control Board at that time, awaiting approval for the transfer to plaintiff. Nevertheless, it was still owned by the taxpayer and no provision of state law in the Liquor Code, 47 P.S. § 1–101, *et seq.*, or elsewhere provides otherwise. The extent of his ownership interest is discussed below.

**2.** Because of this conclusion, we will not discuss defendant's argument concerning our lack of jurisdiction to hear this case under 28 U.S.C. § 1346.