790 F.2d 354
 57 A.F.T.R.2d 86-1423, 86-2 USTC P 9516,
1 UCC Rep.Serv.2d 230
 21 WEST LANCASTER CORP.
v.
MAIN LINE RESTAURANT, INC., Plaginos, William, Plaginos,
Maria, the United States of America Internal Revenue Service,
and
Commonwealth of Pennsylvania Department of Revenue.
Appeal of The UNITED STATES of America (being the same as
the named defendant United States Internal Revenue Service).
 No. 85-1554.
 United States Court of Appeals,
Third Circuit.
 Argued April 18, 1986.
Decided May 12, 1986.
 
 Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Lisa A. Prager (argued), attorneys, Tax Div., Dept. of Justice, Washington, D.C., Edward S.G. Dennis, Jr., U.S. Atty. of counsel, Philadelphia, Pa., for appellants.
 Michael H. Kaliner, Davis S. Fishbone (argued), Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for appellees.
 Before ADAMS, GIBBONS and WEIS, Circuit Judges
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal arises out of conflicting claims to a liquor license. A restaurant operator borrowed money and gave the lender a security interest in the restaurant equipment and its liquor license. Subsequently, the Internal Revenue Service (IRS) filed a lien on the license to recover taxes owed by the restaurant operator. The district court, 614 F.Supp. 202, held that the prior security interest defeated the claim of the IRS. Because we conclude that a Pennsylvania liquor license is not "property" subject to a valid security interest filed under state law, but is "property" subject to a federal tax lien, we will reverse.
 
 I.
 
 2
 The liquor license at issue in this case was originally owned by Main Line Restaurant, Inc. (Main Line), a restaurant operator in suburban Philadelphia. In June, 1980, Main Line borrowed $60,000 from Jaybee Loan Company (Jaybee), and in exchange granted Jaybee a security interest in its restaurant equipment and its liquor license. Apparently as a result of financial difficulties, Main Line failed to pay taxes due the IRS in the latter part of 1980. The following year, 1981, the IRS made assessments against Main Line for unpaid federal employment taxes and interest for the third and fourth quarters of 1980 and for 1981.
 
 
 3
 In May, 1983, 21 West Lancaster Corporation (21 West) purchased all of Main Line's assets, including its liquor license. Several days later, on May 23, 1983, Jaybee, the $60,000 creditor, assigned its security interest in the liquor license to William and Maria Plaginos. In June, 1983, in response to the assignment of the security interest to the Plaginos, 21 West and Main Line revised the agreement by which 21 West was to buy Main Line's assets. The revision divided the purchase into two transactions, one for the liquor license and one for the remaining assets. Main Line sold the liquor license to 21 West for $60,000, which was to be paid by the buyer directly to the Plaginos, as assignees of Jaybee's security interest in the license. In the second part of the sale, Main Line transferred the remainder of the assets to 21 West for $115,000, also to be paid directly to the Plaginos.
 
 
 4
 On August 17, 1983, the IRS served a notice of levy upon 21 West seeking $65,729.21 in unpaid tax assessments owed by Main Line. As a result, 21 West was faced with conflicting demands: it owed the Plaginos $60,000 for the liquor license, and the IRS was seeking from it an almost identical amount to satisfy the tax lien. To resolve the situation, on June 18, 1984, 21 West deposited $62,283.12 into the registry of the district court, representing the $60,000 owed to the Plaginos, plus interest earned on that sum from December 20, 1983. Thereafter, 21 West filed an interpleader action in the district court, seeking an adjudication of the competing claims to the fund by the IRS and the Plaginos.
 
 
 5
 The district court ruled that the security interest granted in 1980 to Jaybee, into whose position the Plaginos stepped, took precedence over the subsequent IRS tax lien. It first acknowledged that under Pennsylvania law a liquor license is not property and cannot be subject to a security interest. 1412 Spruce, Inc. v. Pennsylvania Liquor Control Board, 504 Pa. 394, 474 A.2d 280 (1984); In re Revocation of Liquor License No. R-2193, 72 Pa.Commw. 367, 456 A.2d 709 (1983). Noting, however, that the license does enhance the value of the licensee's business, the district court ruled that this "value enhancement component" could be subject to a security interest. Accordingly, it held that the security interest assigned by Main Line to Jaybee in 1980 was valid, and that it was senior to the subsequent lien held by the IRS. The government filed a timely appeal.
 
 II.
 
 6
 Under the Internal Revenue Code, a federal tax lien is created in the amount of any unpaid tax on "all property and rights to property, whether real or personal, belonging to the delinquent taxpayer." 26 U.S.C. Sec. 6321 (1982). The lien arises automatically when the outstanding taxes are assessed, 26 U.S.C. Sec. 6322, and extends to all property belonging to the taxpayer, Glass City Bank v. United States, 326 U.S. 265, 267-68, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945) (interpreting predecessor section of Sec. 6321). A lien arising under Sec. 6321 is afforded priority over all other unperfected liens or claims asserted against the taxpayer's property. Sec. 6323(a). An IRS lien is ineffective against certain parties, including a "purchaser, holder of a security interest, mechanic's lien or judgment lien creditor," until the notice of the lien has been properly filed by the government. Id.
 
 
 7
 Thus the threshold question here is whether Main Line, as owner of the liquor license, possessed "property" or "rights to property" within Sec. 6321 such that an IRS lien could attach to it.[1] If the license is property, and an IRS lien did attach to it, we must then determine whether the IRS lien is ineffective under Sec. 6323(a) because of a prior lien or claim.
 
 
 8
 Determining whether an IRS lien attaches to property rights entails inquiry into both state and federal law. The Internal Revenue Code itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 78 S.Ct. 1054 (1958). A court therefore must look first to state law to ascertain the existence and nature of the interests against which an IRS lien has been asserted. See, e.g., Aquilino v. United States, 363 U.S. 509, 512-14, 80 S.Ct. 1277, 1279-81, 4 L.Ed.2d 1365 (1960); Rodriguez v. Escambron Development Corp., 740 F.2d 92, 97 (1st Cir.1984). While state law creates legal interests and defines their incidents, "the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute requires an interpretation of that statute, which is a Federal question." In re Halprin, 280 F.2d 407, 409 (3d Cir.1960); see Bess, 357 U.S. at 56-57, 78 S.Ct. at 1057-58; Rodriguez, 740 F.2d at 97 (federal law governs whether state-created "rights are 'rights to property' to which a tax lien may attach"); JFWIRS Ltd. v. United States, 607 F.Supp. 566 (M.D.Pa.1985). See also Young, Priority of The Federal Tax Lien, 34 U.Chi.L.Rev. 723, 726-28 (1967).
 
 
 9
 We turn to the status of a liquor license under the Pennsylvania Liquor Code. Once granted a liquor license may not be revoked arbitrarily by the state, 47 Pa.Stat.Ann. Sec. 4-464 (Purdon 1985 Supp.), and the state may not arbitrarily interfere with the transfer of the license. Id. Moreover, while the Pennsylvania Liquor Code bars a licensee from directly assigning or transferring the license to another, the Liquor Control Board may transfer the license from one person to another solely upon payment of the transfer filing fee and the execution of a new bond. 47 Pa.Stat.Ann. 4-468(a). As a result, in practice a liquor license "is subject to bargain and sale in the marketplace." 1412 Spruce Inc. v. Pennsylvania Liquor Control Board, 504 Pa. 394, 405, 474 A.2d 280, 286 (1984) (Larsen, J., dissenting).
 
 
 10
 Pennsylvania courts have repeatedly recognized the additional value that a liquor license creates for a licensee. Thus, a condemnee whose license lost value as a result of the condemnation of his premises was held entitled to just compensation for the license. Redevelopment Authority of Philadelphia v. Lieberman, 461 Pa. 208, 336 A.2d 249 (1975). When a licensee dies, the Liquor Control Board may transfer the license to the licensee's surviving spouse or a person designated by the licensee. Thus, "the right to apply for such transfer is a right which possesses value," and the right to apply for transfer is includable in the valuation of decedent's estate. In re Feitz' Estate, 402 Pa. 437, 445, 167 A.2d 504, 508 (1961).
 
 
 11
 There is no bright-line rule or mechanical definition to guide us in determining whether a Pennsylvania liquor license, given the foregoing attributes, constitutes property or rights to property for federal tax lien purposes. Neither Congress nor the Supreme Court has essayed a broad rule of classification. In enacting Sec. 6321, Congress "was perfectly willing to let contemporary transactions be analyzed to determine whether or not the delinquent taxpayer had any part of a bundle of rights of commercial value, to which the tax lien would attach." Randall v. H. Nakashima & Co., Ltd., 542 F.2d 270, 278 (5th Cir.1976). Courts confronting the question have generally classified as property or rights to property interests which can generate pecuniary value and are transferrable. See, e.g., Bess, 357 U.S. at 55, 78 S.Ct. at 1057 (for tax lien purposes, life insurance policies are property to the extent of their cash surrender value, since policy holder could compel payment of that amount); Note, Property Subject to the Federal Tax Lien, 77 Harv.L.Rev. 1485, 1486-87 (1964) (federal classifications have focused on transferability and leviability of interest). In the words of one court, the question to be asked is, "was the interest of the taxpayer ... bargainable, was it transferable, did it have value?" Nakashima, 542 F.2d at 278.
 
 
 12
 In view of the nature of a Pennsylvania liquor license as recounted above, it seems plain that it would constitute property or rights to property. Courts considering liquor licenses in other states have deemed them to be property. See, e.g., Bogus v. American National Bank of Cheyenne, 401 F.2d 458 (10th Cir.1968); Paramount Finance Co. v. United States, 379 F.2d 543 (6th Cir.1967); Boss Co. v. Board of Commissioners, 40 N.J. 379, 192 A.2d 584 (1963). Indeed, this Court, albeit without extended discussion, has treated a Pennsylvania liquor license as property for federal tax purposes. See Aqua Bar & Lounge v. United States Department of Treasury, 539 F.2d 935 (3d Cir.1976) (allowing government to bring suit to quiet title to liquor license seized as "property by IRS).
 
 
 13
 Some question, however, may be raised by two recent Pennsylvania decisions. In 1412 Spruce, Inc., supra, 504 Pa. at 400, 474 A.2d at 283, the Pennsylvania Supreme Court in 1984 held that a liquor license is not property subject to execution by a judgment holder. The court based its ruling on the language of 47 Pa.Stat.Ann. 4-468(b.1), which states that "the license shall continue as a personal privilege and nothing herein shall constitute the license as property."[2] In In re Revocation, supra, 72 Pa.Commw. at 370, 456 A.2d at 711, the Commonwealth Court held that a Pennsylvania liquor license is not property that may be subject to a security interest under the Uniform Commercial Code.
 
 
 14
 Insofar as these decisions determine the nature of Pennsylvania liquor licenses as legal interests, they are binding on this court. However, they do not determine the characterization of these interests under federal tax law. See U.S. v. Bess, 357 U.S. at 56-57, 78 S.Ct. at 1057-58 (state law preventing creditors from levying on life insurance proceeds "is inoperative to prevent the attachment of liens created by Federal statutes in favor of the United States"); Halprin, 280 F.2d at 409-410. It remains the task of this Court to evaluate whether a Pennsylvania liquor license, as created and limited by state law, constitutes property or rights to property under federal tax law.
 
 
 15
 Looking beyond the "privilege" label which the decisions apply, 1412 Spruce and In re Revocation somewhat weaken the case for classifying a liquor license as property, since their effect is to restrict a license's leviability. Nonetheless, a liquor license continues to have pecuniary value for its holder, in the form of potentially increased business revenues. Moreover, it may still be transferred and sold.[3] For example the IRS finds willing buyers when it seeks to sell liquor licenses it has acquired. See, e.g., Baltimore 55, Inc. v. Commonwealth of Pennsylvania, No. 85-1080 (M.D.Pa. Dec. 31, 1985). And private parties regularly transfer liquor licenses, "usually for consideration, and often in connection with the sale of [a] liquor business." 1412 Spruce, 504 Pa. at 400, 474 A.2d at 283. Consequently, we conclude that a Pennsylvania liquor license constitutes property or rights to property within the meaning of Sec. 6321, and is therefore subject to a federal tax lien.
 
 III.
 
 16
 Having determined that Main Line's liquor license is property within the federal tax laws, our analysis now turns to the nature of the interest Jaybee acquired in the license through its $60,000 loan to Main Line. If that transaction conferred on Jaybee a valid security interest in the license, then the IRS's lien is ineffective against it under Sec. 6323(a), and the Plaginos, as assignees of Jaybee, are entitled to the fund deposited in the registry of the Court.
 
 
 17
 The district judge acknowledged that under Pennsylvania law, a liquor license may not be subject to execution, see 1412 Spruce, nor may it be subject to a valid security interest, see In re Revocation. Under the Uniform Commercial Code, attachment and enforcement of a security interest is allowed only upon collateral, 13 Pa.Cons.Stat.Ann. Sec. 9203 (Purdon 1984), which is defined as "property subject to a security interest ..." id. at Sec. 9105(a). Because the Liquor Code states that a liquor license is not property but a privilege, Pennsylvania law holds that a liquor license may not be collateral, and a creditor therefore may not hold a valid security interest in it. In re Revocation, 72 Pa.Commw. at 369-370, 456 A.2d at 711.[4] As a federal court, we are without power to modify this ruling, even were we so inclined, for it defines the nature of the legal interest under state law rather than its characterization under federal law. See In re Halprin, 280 F.2d at 409-410.
 
 
 18
 The effect of the Pennsylvania decisions was circumvented by the district court when it theorized that the liquor license has a value enhancement component subject to a security interest. It noted first the actual value of a liquor license, and cited the earlier Pennsylvania decisions recognizing that value, such as Lieberman and Feitz Estate. It then declared: "Therefore the court concludes that although the Liquor Code bars assignment of the license, it does not bar assignment of the value enhancement component of the license. See Branding Iron, Inc. v. Business Loans, Inc., 7 B.R. 729 (Bankr.E.D.Pa.1980)."
 
 
 19
 Neither Branding Iron nor any other decision, however, supports the proposition that there exists a value enhancement component to a liquor license separable from the license itself. Nor do we believe such a theory to be a tenable one. Decided prior to the Pennsylvania decisions in 1412 Spruce and In re Revocation, Branding Iron made no mention of a value enhancement component; it simply canvassed Pennsylvania law and authority from other jurisdictions and concluded that a liquor license is property subject to a security interest. Specifically, it noted that the "courts of Pennsylvania have not dealt squarely with the issues of security interests attaching to liquor licenses...." 7 B.R. at 731. Now that the state courts have decided this issue, the ruling by the bankruptcy court in Branding Iron is drained of vitality. Indeed, in In re Revocation, the court expressly rejected Branding Iron, 72 Pa.Commw. at 370 n. 10, 456 A.2d at 711 n. 10.
 
 
 20
 Moreover, the distinction between the license and its value enhancement component is a highly metaphysical one. Under the district court's approach, while Main Line concededly could not validly assign a security interest in the license itself, it could validly transfer a security interest in the increased value to its business created by the license. Such an outcome would seem to contradict the unambiguous import of the Pennsylvania authority defining the nature of a liquor license, a question of state law.
 
 
 21
 To be sure, the result we reach in this case is not an altogether satisfactory one either. It leads to the anomalous conclusion that although a liquor license is not property for purposes of a security interest under Pennsylvania state law, it is property for purposes of a federal tax lien. Of greater concern to the parties, our analysis means that the assignee of a creditor who has taken what were reasonably believed to be the steps necessary to perfect its interest in the license as security will nonetheless be defeated by a subsequent tax claim. This would seem to be harsh treatment of the creditor. As the situation now stands, however, the ability to alter such a result rests with the Pennsylvania legislature, which may choose to redefine the nature of a liquor license under state law. Absent such action, this Court must conclude that under the circumstances present here, the IRS lien is valid, and the Plaginos' security interest is not. Accordingly, the judgment of the district court will be reversed.
 
 
 
 [1]
 The district court did not explicitly decide whether the liquor license was property or rights to property within Sec. 6321, although it implied that the license is such property by referring to the date the government's tax lien arose. App. at 136. Under the Internal Revenue Code such a lien can arise only on "property and rights to property...." 26 U.S.C. Sec. 6321. However, the district court also sought to distinguish earlier decisions by other courts suggesting that a liquor license could be property, and it is possible to read the opinion as disputing that a license is property for federal tax lien purposes
 
 
 [2]
 This subsection of the Liquor Code states that where a licensee becomes insolvent or bankrupt, the license shall be placed in safekeeping with the board for the balance of the term of the license, and for an additional year upon application to the board by the trustee, receiver, or assignee. It also provides:
 The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license had been issued, including the right to transfer the license subject to the approval of the board. The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property.
 
 
 [47]
 Pa.Stat.Ann. 4-468(b.1)
 
 
 [3]
 Of course, the right to sell a license is not absolute, since the state Liquor Control Board may deny a transfer. In that case, the licensee still has the right to appeal the denial, and may also apply for a transfer to another transferee
 
 
 [4]
 1412 Spruce, the Pennsylvania Supreme Court case, is similarly reasoned. Under Pennsylvania Rule of Civil Procedure 3107, "[r]eal or personal property" may be attached. But since 47 Pa.Stat.Ann. Sec. 4-468(b.1) states that a liquor license is not property, the court reasoned, by definition it cannot be attached. 504 Pa. at 396-97, 474 A.2d at 281