281 F.2d 726
 60-2 USTC P 9604
 UNITED STATES of America, Appellant,
v.
STATE OF CALIFORNIA, acting by and through the State Board
of Equalization, the Department of Employment and the
Department of Alcoholic Beverage Control; Charles E. Hoppe,
Trustee of the Estate of Lee C. Belt, doing business
as'Lejac's,' Bankrupt, and Louis A. Cudia, Sr., and John S.
San Fillipo, Appellees.
 No. 16474.
 United States Court of Appeals Ninth Circuit.
 July 11, 1960.
 
 Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, George F. Lynch, Attys., Dept. of Justice, Washington, D.C., Lynn J. Gillard, U.S.Atty., Charles Elmer Collett, Asst. U.S.Atty., San Francisco, Cal., for appellant.
 Stanley Mosk, Atty. Gen., for the State of California, Ernest P. Goodman and Eugene B. Jacobs, Deputies Atty. Gen., for appellees.
 Before STEPHENS, BARNES and MERRILL, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 This case arises out of bankruptcy proceedings in which the United States petitioned for an order (1) decreeing that its tax liens against property of the bankrupt and proceeds of sale of such property were superior to the claims of the State of California for taxes, and (2) directing that California return to the receiver for payment to the United States proceeds of sale in the sum of $4,668.99. The referee denied the petition and the District Court affirmed. The United States then tood this appeal.
 
 
 2
 The property involved is a liquor license issued by the State of California. Section 24049, of the California Business and Professions Code, provided at the time applicable:
 
 
 3
 'The department may refuse the renewal or transfer of any license when applicant is delinquent in the payment of any taxes due under this division or under the Sales and Use Tax Law, or any amounts due under the Unemployment Insurance Code, the Personal Income Tax Law, or the Bank and Corporation Tax Law.'
 
 
 4
 Belt, the bankrupt, on May 11, 1956, was issued an on-sale general liquor license by the State of California. Prior to December 28, 1956, Belt, applied to the State Department of Alcoholic Beverage Control for renewal of the license. Belt was delinquent in payment of Federal Withholding and Social Security taxes. On December 28, 1956, the United States, pursuant to a warrant of distraint, closed Belt's business operation by seizing his property, including yis liquor license certificate. On January 7, 1957, an involuntary petition in bankruptcy was filed against Belt. On January 8, 1957, the United States surrendered the license certificate to the receiver in bankruptcy. The California Department of Alcoholic Beverage Control then renewed Belt's license and issued a 1957 certificate to him. On January 28, 1957, at auction, the license was sold by the receiver to certain purchasers subject to the approval of the department. This sale was confirmed (subject to state approval) by the referee on February 8, 1957. The department withheld transfer of the license to the purchasers pending payment of delinquent state sales and use taxes and unemployment contributions. The receiver then made payment to the state of these sums. After such payment and investigation of the moral character of the purchasers, the department on April 10, 1957, transferred the license and issued a certificate to the purchasers. From the proceeds of sale, the United States received $1,831.01. It seeks recovery of the amount of delinquent taxes paid to the state by the receiver as a condition to transfer of license.
 
 
 5
 The United States contends that to permit the state to retain this sum is to permit the state, through its state-created rule, to defeat the paramoung right of the United States to levy and collect taxes pursuant to Article I, 8, of the United States Constitution, and is to render the United States tax claim subordinate to that of the state.
 
 
 6
 The question, however, is not as to the supremacy of the tax lien of the United States. The question is as to the nature of the 'property and rights to property' (26 U.S.C. 6321) to which that lien attached. Ordinarily, in determining this question, we look to state law. United States v. Bess, 1957, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135. California, however, has not yet spoken upon the problem which we face in this proceeding.
 
 
 7
 In Hyde v. Woods, 1876, 94 U.S. 523, 24 L.Ed. 264, the Supreme Court dealt with the question whether a rule of the Stock Exchange requiring members' debts to be first satisfied from the proceeds of a sale of a seat was an unlawful preference as against general creditors of a bankrupt. The court stated, at page 525:
 
 
 8
 'Neither the bankrupt law nor any principle of morals is violated by this provison, so far as we can see. A seat in this board is not a matter of absolute purchase. Though we have said it is property, it is incumbent with conditions on purchase, without which it could not be obtained. It never was free from the conditions of Article 15, neither when Fenn bought, nor at any time before nor since. That rule entered into and became an incident of the property when it was created, and remains a part of it into whose hands soever it may come. As the creators of this right-- this property-- took nothing from any man's creditors when they created it, no wrong was done to any creditor by the imposition of this condition.'
 
 
 9
 To the same effect if Board of Taade of City of Chicago v. Johnson, 1924, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533.
 
 
 10
 Here the lincense existed because the state had issued it. If the licensec acquired something of value, it was because the state had bestowed it upon him. Whatever value the license, as property, may have had to a purchaser depended upon its transferability. If it was transferable, it was because the state had made it so. If the state had seen fit to impose conditions upon issuance or upon transfer of property it has wholly created, that is the state's prerogative so long as its demands are not arbitrary or discriminatory. The federal government has no power to command the state in this area. It has no power to direct that property be created by the state for purposes of federal seizure.
 
 
 11
 The United States contends that the state has no right to impose such a condition against the claims of the United States; that a state's control over the issuance of liquor licenses is derived from its police power; that the conditions here imposed by the state relate to revenue and not to police control.
 
 
 12
 Assuming, arguendo, that conditional demands of a state, unrelated to the provilege sought to be transferred, would be regarded as arbitrary, we cannot say that such is the case here. If (as here) the conditions be lawful in the sense that they are proper and reasonable demands to make of an applicant, they constitute a limitation upon the right of the applicant and upon the property which that right constitutes and upon the values which attach to that property. Those values and no greater values became a part of the bankrupt estate and fell within the reach of the United States.
 
 
 13
 Affirmed.