[Civ. No. 32615. First Dist., Div. Four. June 12, 1974.]

KERRY M. GOUGH, as Trustee, etc., Plaintiff and Appellant, v. WALTER ARTHUR FINALE et al., Defendants and Respondents.

## COUNSEL

Robert R. Barton for Plaintiff and Appellant.

Richard J. Breitwieser for Defendants and Respondents.

## OPINION

**CALDECOTT, P. J.**—This appeal is from a summary judgment in favor of all the defendants on all three counts of plaintiff-appellant's complaint.

Appellant, as trustee in bankruptcy, commenced this action for declaratory judgment, permanent injunction and other relief. The first count of the complaint questioned the validity of section 24074 of the California

Business and Professions Code relating to the transfer of liquor licenses and payments from escrow holder to creditors of the transferors. The second count pertained to defendant Hoffman's claimed security interest. The third count alleged that defendant Hoffman had a second deed of trust on the bankrupts' real properties and should pursue his collection remedies against the deeds of trust.

*The Distribution of Bankrupts' Assets Are Governed by the Bankruptcy Act, Not Business and Professions Code Section 24074*

Appellant contends that certain funds held in escrow, representing part payment of the purchase price for the sale of the bankrupts' liquor business and license, passed to the trustee as property of the bankrupt at the time of adjudication of bankruptcy and should be distributed according to Bankruptcy Act priorities rather than according to priorities provided by California Business and Professions Code section 24074.

On August 22, 1967, the bankrupts, Finale and Morley, purchased Morris Hoffman's liquor store and liquor license. Finale and Morley executed and delivered their promissory note in the amount of $53,941.20 to Hoffman. The note was secured by second deeds of trust on the respective homes of the bankrupts.

On December 17, 1969, Finale and Morley sold their liquor license and the other assets of their store to Albert Cianfici and Victor DiGiovanni. Pursuant to section 24074, defendant Breitwieser was appointed escrow holder. The parties executed the written agreement required by section 24074, instructing the escrow holder to pay the proceeds of the sale to creditors in the order of priority required by the code.

On May 12, 1970, Cianfici and DiGiovanni executed their promissory note in the amount of $27,300 and delivered it to the escrow holder. The note called for monthly payments over a period of several years.[1]

Finale and Morley filed their voluntary bankruptcy petitions, and were duly adjudicated bankrupt on October 27, 1970.

Sections 24073 and 24074 of the California Business and Professions Code provide in substance that the consideration for the transfer of any liquor business and license is to be paid only after the transfer is approved by the board (§ 24073) and that before the filing of the transfer application with the board, the licensee and the intended transferee shall establish an escrow under which, if the purchase price is not sufficient to pay in

---

[1]The proceeds of the note have been applied to pay the remainder on Hoffman's secured claim.

full the claims of all bona fide creditors of the licensee, the purchase price will be distributed first, to wage claims of the seller's employees; second, to the payment of claims of secured creditors; third, to the United States for federal taxes; fourth, to payment of mechanics' liens; fifth, to the payment of escrow brokerage expenses, and attorney fees; sixth, to payment of claims for goods sold to the licensee for resale at the licensed premises and claims for services rendered in connection with the operation of the licensed business; seventh, to the payment of all other claims in full or pro rata.

This is apparently a case of first impression in California,[2] though section 24073 has been construed by the California courts to be an exercise of the state's police power to regulate under a mandatory and exclusive program the manner in which creditors of a liquor licensee may be protected in the collection of their debts from the proceeds of the "sale" of a license. (*Grover Escrow Corp.* v. *Gole,* 71 Cal.2d 61 [77 Cal.Rptr. 21, 453 P.2d 461].) The court in *Grover Escrow Corp.* specifically stated that section 24074 sets forth a "mandatory and exclusive system of priorities intended to replace other procedures. . . ." (*Supra,* at p. 65.) The case did not, however, involve a bankruptcy.

Section 64 of the Bankruptcy Act (11 U.S.C. § 104) provides that debts of a bankrupt shall be paid in an order of priority different from that set forth in Business and Professions Code section 24074. Appellant contends that section 24074 must be held not controlling when the seller is adjudicated bankrupt before the sale proceeds are distributed. He argues that section 24074 is contrary to the Bankruptcy Act and contrary to the supremacy provision (art. VI, cl. 2) and the bankruptcy clause (art. I, § 8, cl. 18) of the United States Constitution.

Appellant relies on a number of cases for his proposition.

In *In re Crosstown Motors, Inc.,* 272 F.2d 224, the lower court denied an entrustor's petition for a prior lien on general assets of a bankrupt and ordered judgment in favor of the trustee in bankruptcy. The Court of Appeal held that the Illinois Trust Receipts Act section dealing with an entrustor's rights to proceeds was intended to give the entrustor a priority ahead of general creditors upon insolvency of the trustor, and thus was invalid in that it conflicted with section 64 of the Bankruptcy Act and unconstitutional because federal bankruptcy law prevails over state statutes. The Illinois Act gave automobile financiers priority ahead of general

---

[2]The United States District Court for the Northern District of California, in *In the Matter of Leslie,* No. 4-71-2023 W.T.S., held on similar facts involving the very same question that the trustee in bankruptcy was entitled to judgment.

creditors upon insolvency of the automobile dealer for claims based upon the unpaid proceeds of cars sold out of trust.

The primary issue before the court was whether the Illinois Act gave the entrustor a lien on the general assets of a bankrupt or a *priority* in payment for the value of the proceeds. (*Supra,* at p. 226.) Determining that the act gave the entrustor a priority in payments of assets, brought forth the application of section 64 of the Bankruptcy Act.

In determining that section 64 of the Bankruptcy Act was superior to the Illinois State statute in determining priorities, the court reasoned as follows: "In 1938 Congress passed the Chandler Act whereby § 64 of the Bankruptcy Act was amended, *inter alia,* by elimination of state-created priorities, with an exception as to rent which, of course, is not relevant here. The necessity for the exclusion of state-created priorities by Congress was obvious as many bankrupt estates had been consumed, to the exclusion of general creditors, by the ever increasing classes of state priorities. Collier on Bankruptcy, Vol. 3, p. 2052.

"When § 10 of the Illinois Trust Receipts Act is silhouetted against this historical background the reason for the absence of the word 'lien' and the use of the word 'priority' is pellucid. In 1935, when the Illinois Trust Receipts Act was passed by the Illinois legislature, such a state-created priority was recognized in bankruptcy. However, since the passage of the Chandler Act the priority provided by § 10 applies in insolvency proceedings other than bankruptcy but is void under § 64 of the Bankruptcy Act now and as it existed at the time of the transactions in the case at bar. . . ." (*Supra,* at p. 227.)

Respondent attempts to distinguish the applicability of the *Crosstown Motors* case by noting that (1) "Commercial (the entrustor) attempted to obtain a priority on the *general assets* of the bankrupt whereas in the case at bar the asset in question is a specific promissory note"; and (2) the items received by Commercial were all received by Commercial within four months of the adjudication of bankruptcy.

Both distinctions are without merit. Except for the statute in question, the promissory note is a general asset of the bankrupt. If the statute is, as contended by the appellant, inapplicable to bankruptcy situations, the court will be dealing with a general asset. As section 24074 establishes priorities, not liens, the sole question is whether section 24074 is contrary to section 64 of the Bankruptcy Act.

In *Elliott* v. *Bumb,* 356 F.2d 749, the Court of Appeal held that a California state statute, regulating state licensed check and money order

sellers conflicted with the federal Bankruptcy Act and must yield. The statute conflicted with the bankruptcy rule which provides that if a trust fund cannot be identified by the beneficiary, he becomes merely a general creditor of the bankrupts' estate.

Respondents rely mainly on *United States* v. *State of California,* 281 F.2d 726 and *Middleton* v. *Fidelity-Philadelphia Trust Co.,* 35 F.2d 851, in answer to appellant's argument.

In *United States* v. *State of California,* the Ninth Circuit considered a United States government contention that section 24049 of the California Business and Professions Code conflicted with the paramount federal right to levy and collect on its federal tax lien. Section 24049 provided that the "Department" may refuse to review or transfer any liquor license when the applicant is delinquent in the payment of any state taxes arising out of the exercise of the privilege of a liquor license.

The Court of Appeal held that the state was entitled to retain the amount of delinquent taxes paid to it by the receiver as a condition to the transfer of the liquor license of the bankrupt, though prior to transfer, the United States had closed the bankrupt's business operation by seizing his property and his liquor license. The court upheld the statute as against the federal claim, stating that the issue was not the supremacy of the federal tax lien, but the nature of the liquor license itself. "Here, the license existed because the state had issued it. If the licensee acquired something of value, it was because the state had bestowed it upon him. Whatever value the license, as property, may have had to a purchaser depended upon its transferability. If it was transferable, it was because the state had made it so. If the state had seen fit to impose conditions upon issuance or upon transfer of property it has wholly created, that is the state's prerogative so long as its demands are not arbitrary or discriminatory. The federal government has no power to command the state in this area. It has no power to direct that property be created by the state for purposes of federal seizure." (*United States* v. *State of California, supra,* 281 F.2d at p. 728.)

The court cited with approval the analogous case of *Hyde* v. *Woods,* 94 U.S. 523 [24 L.Ed. 264], where the Supreme Court similarly held that a rule of the San Francisco Stock Exchange, requiring that upon sale of a member's seat, his debts to members of the exchange shall be first satisfied from the proceeds of the sale to the exclusion of outside creditors, was not an unlawful preference against general creditors of the bankrupt.

Respondents argue that *United States* v. *State of California, supra,* is

consistent with their contention and the trial court's finding below, that section 24074 is not repugnant to the federal law.

*United States* v. *State of California* and *Hyde* v. *Woods,* cases dealing with the sale of liquor licenses and stock exchange memberships, are inapplicable to section 24074 and are not incompatible with *Elliott* v. *Bumb, supra,* 356 F.2d 749, and other related decisions. The former cases upheld priorities only as applied to the proceeds of the sale of the license or the membership alone, and only in regard to debts due the state or members of the stock exchange that created and granted the rights provided by the license or membership.

*United States* v. *State of California,* along with *Hyde* v. *Woods,* upon which it relied, held only that conditions placed upon issuance or transfer of such property as liquor licenses and exchange seats are incident to and part of the property right thereof to the extent that those conditions are for priority protection of the creator of the property right, e.g., protection of the State of California's right to priority collection of its own taxes and the right of an Exchange to priority collection of debts due its own members. (*In the Matter of Leslie, supra,* at p. 6.)

California, by enacting section 24074 seeks to go further when it attempts to grant priority rights, not to itself, or for its own concerns, but to a certain class of private creditors of a license holder.

*Middleton* v. *Fidelity-Philadelphia Trust Co., supra,* 35 F.2d 851, is entirely consistent with the above analysis. *Middleton* involved the proceeds from the sale of a bankrupt stock broker's securities. The court of appeal stated in its decision, affirming a judgment requiring that the proceeds from the sale of a bankrupt stock broker's securities be paid over to the trustee: "*As to the balances arising from transactions between members of the exchange*: The exchange may properly take cognizance of transactions occurring on its floor, and as a necessary incident may not only regulate the transaction, but exercise reasonable coercive control over the participants therein in respect thereto. As an incident to this control a member may be disciplined by the exchange for improper conduct occurring anywhere, to the extent of suspension, or even expulsion, and deprive him of his seat or membership. But neither this regulatory nor this coercive power can be validly exercised so as to embrace contracts entered into between members and actually carried out on other exchanges or places elsewhere than the particular exchange of which they are members, so as to exclude the grip and operation of the bankruptcy law." (*Supra,* at p. 856.)

Section 24074 of the Business and Professions Code, involving the State

of California with its own system of priorities, falls within the rationale of *Elliott* v. *Bumb, supra,* 356 F.2d 749, to the effect that statutory priority conditions prescribed by the state when regulating its licensees for the protection of third persons, e.g., private purchasers of money orders, are invalid insofar as they conflict with the federal Bankruptcy Act.

There is nothing in California law which suggests that the priority provisions of section 24074 subsume any significant right or concern of the State of California or the public, beyond the protection of suppliers or service creditors of licensee. (See *In the Matter of Leslie,* N.D.Cal. May 25, 1973, No. 4-71-2023 W.T.S.)

### *Bankruptcy Court's Jurisdiction*

Section 2(a)(21) of the Bankruptcy Act (11 U.S.C. § 11(a)(21)) vests jurisdiction in the bankruptcy courts to: "Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title or, where an arrangement or a plan under this title has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this title, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required, except in proceedings under section 205 and chapters 10 and 12 of this title, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized *more than four months prior to the date of bankruptcy.*" (Italics added.)

■ Respondent argues that section 2(a)(21) divests the trustee from the powers which he is attempting to assert in this case because respondent was appointed escrow holder ten months and four days prior to the sellers' filing in bankruptcy.

The provision of the Bankruptcy Act relied on by respondents is inapplicable to the action at bar. Respondent is neither a "receiver or trustee appointed in proceedings not under this title," nor an assignee for the benefit of creditors,[3] nor an agent authorized to take possession of or to liquidate a person's property.

---

[3] "A general assignment for the benefit of creditors may be briefly defined as a transfer by a debtor of the legal and equitable title to all his property to a trustee, with

Appellant has appealed "from the Order Granting Summary Judgment For Defendant And Summary Judgment For Defendant, and the whole of said order . . . ." The order granting summary judgment is a nonappealable order and the appeal should be from the judgment.

The judgment is reversed.

Rattigan, J., and Christian, J., concurred.

---

authority to liquidate his affairs and distribute the proceeds equitably to his creditors." (1 Remington on Bankruptcy, § 149, p. 237.) Such is not the case here.