In re Roger George KIMURA and Donna Louise Kimura, Debtors.

UNITED STATES of America, Appellant,

v.

Kenneth BATTLEY, Trustee; Alaska Hotel & Restaurant Employee Trust Funds; Alaska Distributors; K & L Distributors, Inc.; Municipality of Anchorage, Appellees.

No. 91–35010.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 21, 1991.

Decided July 10, 1992.

---

Roy Longacre, Longacre & Associates, Anchorage, Alaska, for appellee, K & L Distributors.

Peter W. Giannini, Giannini & Associates, Anchorage, Alaska, for appellee, Alaska Distributors.

Scott Brandt–Erichsen, Asst. Mun. Atty., Anchorage, Alaska, for appellee, Anchorage.

Gary Sleeper, Jermain, Dunnagan & Owens, Anchorage, Alaska, for appellee, Alaska Hotel–Trust.

Teresa Williams, Asst. Atty. Gen., Anchorage, Alaska, for amicus, State of Alaska.

Before: TANG, REINHARDT, and RYMER, Circuit Judges.

TANG, Circuit Judge:

This appeal requires us to reconcile the operation of state and federal law in the context of a federal tax lien and a competing state lien-like interest created in favor of trade creditors who have extended credit to a business licensed by the State of Alaska to sell liquor. Alaska law provides that, before a liquor license may be transferred, objecting trade creditors must be satisfied. Both the bankruptcy court and the Bankruptcy Appellate Panel ("BAP") determined that trade creditors are entitled to priority payment from proceeds received upon transfer of an Alaskan liquor license, even if the competing claim is a federal tax lien.

The Internal Revenue Service ("IRS") appeals. We reverse the decision of the bankruptcy court and of the BAP.

## FACTUAL AND PROCEDURAL BACKGROUND

During the second and fourth quarters of 1986 and the first quarter of 1987, Roger Kimura and Donna Kimura, as "responsible persons" of Nikko Garden, Inc., failed to pay over to the United States income

Gary R. Allen, Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

and federal FICA taxes due. On May 19, 1987, the Internal Revenue Service ("IRS"), assessed a civil penalty against the Kimuras in the amount of $103,617 for the taxes owed, pursuant to 26 U.S.C. § 6672. As a result of the assessed and unpaid federal taxes, a federal tax lien attached to all of the Kimuras' property pursuant to 26 U.S.C. § 6321. Notice of the federal tax lien was filed on June 3, 1987.

Almost a year later, on April 22, 1988, the Kimuras filed a Chapter 7 bankruptcy petition. Eventually, the bankruptcy trustee sought to liquidate the Kimuras' liquor license, issued by the Alaska Alcoholic Beverage Control Board ("ABC Board"). On January 9, 1989, the bankruptcy trustee gave notice to all creditors of its application for authorization to sell the liquor license, subject to prepetition liens or claims on file with the ABC Board, and also to a sales commission. On April 4, 1989, the bankruptcy court approved the sale of the Kimuras' interest in the liquor license for $82,500.

Alaska law provides that a liquor license may not be transferred to another person without the consent of the ABC Board. Alaska Stat. § 04.11.040. Furthermore, the ABC Board may not consent to the transfer of a liquor license if

> the transferor has not paid all debts or taxes arising from the conduct of the business licensed under this title unless (A) the transferor gives security for the payment of the debts or taxes satisfactory to the creditor or taxing authority.

*Id.* § 04.11.360(4). Objecting creditors, whose debts arise from the liquor-licensed business, may block the proposed transfer of the license.

Three of the Kimuras' trade creditors initially objected to the proposed sale of the liquor license. In September 1989, however, they stipulated to an amended order which approved the sale and provided "[t]he claims of all creditors who under state law may object to the approval of the sale, transfer and renewal of the license may be asserted against the cash proceeds of the sale." The amended order further provided that all liens and encumbrances upon the liquor license would be transferred to the proceeds of the sale.

On February 2, 1990, the trustee filed a notice of final accounting in which he proposed to distribute the funds in the following order: (1) administrative expenses, including a broker's commission, incurred in the sale of the license; (2) $15,528.87 to the Municipality of Anchorage for local taxes; and (3) the balance of the proceeds on a pro rata basis to creditors who had liens against the liquor license recognized by the ABC Board. The IRS objected to this proposed distribution, arguing that it was entitled to receive the entire balance after the payment of taxes to the Municipality of Anchorage. The bankruptcy court overruled the objection.

The IRS filed an appeal to the Bankruptcy Appellate Panel ("BAP"), which affirmed the bankruptcy court. The BAP stated that the appeal turned upon the issue of what property interest was "created in the debtor pursuant to Alaska state laws governing the creation and transfer of state liquor licenses." Relying on *Queen of the North, Inc. v. LeGrue*, 582 P.2d 144, 149 (Alaska 1978) and *Sulmeyer v. California Dept. of Employment Dev. (In re Professional Bar Co.)*, 537 F.2d 339, 340 (9th Cir.1976) (per curiam) ("The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer.") the BAP concluded that the IRS's tax lien only attached to the debtors' right to petition the ABC Board for the transfer of the liquor license. By implication, the BAP reasoned that the federal tax lien could not take priority over the interests of the Kimuras' creditors because these interests were not part of the Kimuras' property right in the liquor license; the creditors' interests therefore never became part of the bankruptcy estate.

Concerning the relative priority of the IRS tax lien as against the claims of the trade creditors arising from the conduct of the licensed business, the BAP relied on *Artus v. Alaska Dept. of Labor (In re*

*Anchorage Int'l Inn, Inc.),* 718 F.2d 1446, 1451 (9th Cir.1983), and concluded that there was no basis under Alaska law for treating the IRS tax lien differently from the liens of other creditors. The BAP accordingly held that the IRS was only entitled to its pro rata share of the proceeds.

The IRS timely noticed its appeal to this court.

## STANDARD OF REVIEW

■ This court independently reviews the bankruptcy court's decision, because this court is in as good a position as the Bankruptcy Appellate Panel to review the bankruptcy court's findings. *Anderson–Walker Indus., Inc. v. Lafayette Metals, Inc.,* 798 F.2d 1285, 1287 (9th Cir.1986). The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *Pizza of Hawaii, Inc. v. Shakey's, Inc. (Matter of Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1377 (9th Cir.1985).

## DISCUSSION

### I. Creation of the Property Interest

■ The Internal Revenue Code provides in relevant part that a federal tax lien is created in the amount of any unpaid tax on "all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C. § 6321. The broad language of the statute reveals that Congress meant to reach every interest in property that a taxpayer might have. *United States v. National Bank of Commerce,* 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). Property is generally characterized as an aggregate of rights; "the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it." *Black's Law Dictionary* 1095 (5th ed. 1979). "This bundle of rights and powers can be divided among a number of persons, each of whom then possesses an interest that is less than absolute ownership." *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1178 (6th Cir.1990),

*cert. denied,* —— U.S. ——, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991).

Amicus State of Alaska alleges that an Alaska liquor license does not have sufficient attributes of property to be the subject of a federal tax lien. *Cf. id.* at 1170 ("if the [liquor] license is not property within the meaning of the tax lien statute ... then the federal government's tax lien is invalid."). Alaska argues that any liquor license transfer is subject to approval of the ABC Board and cannot take place if there are unsatisfied creditors. Under such circumstances, Alaska contends the license itself has no independent financial value.

Our initial task is to understand and define the bundle of rights and privileges that Alaska law has created in favor of the holder of a liquor license. *See United States v. Bess,* 357 U.S. 51, 55, 57, 78 S.Ct. 1054, 1057, 1058, 2 L.Ed.2d 1135 (1958) (holding that because the federal tax lien attaches to the debtor's interest in property, the initial inquiry is to examine state law to determine the interests created and defined).

Concomitant with our state law inquiry, we must determine, as a matter of federal law, whether the interest created by the state is "property" or a "right to property" to which the federal tax lien can attach. *See National Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2927 ("The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law."); *Terwilliger's Catering,* 911 F.2d at 1171 (holding that federal law determines whether state-created interests constitute property to which the federal tax lien can attach); *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 356 (3rd Cir.1986) (same); *Rodriguez v. Escambron Dev. Corp.,* 740 F.2d 92, 97 (1st Cir.1984) (same). Were federal law not determinative of the classifier of the state-created interest, states could defeat the federal tax lien by declaring an interest not to be property, even though the beneficial incidents of property belie its classification. *Terwilliger's Catering,* 911 F.2d at 1171–72 (citing Note, *Property Subject to the*

*Federal Tax Lien*, 77 Harv.L.Rev. 1485, 1487 (1964)); *see Bess*, 357 U.S. at 56–57, 78 S.Ct. at 1057–58; *21 West Lancaster*, 790 F.2d at 357–58.

■ At bottom, our inquiry into state law to determine the nature of the interest created by Alaska does not require extensive analysis because a liquor license will constitute property, within the meaning of federal law, if the license has beneficial value for its holder, and it is sufficiently transferable. *See Little v. United States*, 704 F.2d 1100, 1105–06 (9th Cir.1983) (stating that whether an asset is property under section 6321 involves determining whether it has pecuniary worth and is transferable); *see also Terwilliger's Catering*, 911 F.2d at 1171; *21 West Lancaster*, 790 F.2d at 357.

■ Courts have recognized the value that a liquor license creates for a licensee. Generally, a liquor license has intrinsic worth that is subject to bargain and sale in the marketplace. *See, e.g., 21 West Lancaster*, 790 F.2d at 357. Indeed, subject to certain conditions, Alaska liquor licenses are transferable both from person to person and from location to location. Alaska Stat. §§ 04.11.040, 04.11.280, 04.11.290. The transferor of a license may retain a security interest in the license to secure payment for real and personal property conveyed to the transferee. *Id.* § 04.11.670. Pursuant to these statutes, the Kimuras' liquor license was ultimately capable of being surrendered and reduced to a value of $82,500. We conclude that an Alaska liquor license satisfies both requirements of independent value and sufficient transferability to constitute property or a right to property within the meaning of 26 U.S.C.

§ 6321. Therefore, a federal tax lien attached to the Kimuras' liquor license when notice of the tax lien was filed by the IRS.

## II. Scope of the Debtors' Property Interest Attached by the Federal Tax Lien

■ Having determined that an Alaska liquor license is property subject to the federal tax lien, we must consider the scope of the debtors' rights in the liquor license. The government's tax lien attaches only to that interest in property owned by the delinquent taxpayers because a lien under section 6321 cannot extend beyond the interest held by the debtors. *See United States v. Rodgers*, 461 U.S. 677, 691, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983); *Schmit v. United States*, 896 F.2d 352, 353 (9th Cir.1990).

■ The trade creditors argue that even if the Kimuras' liquor license was property to which the federal tax lien attached, all the IRS obtained was the debtors' right to petition the ABC Board for transfer of the liquor license.[1] Because Alaska law mandates payment of trade creditors before transfer of the license can occur, the argument continues, the IRS was only entitled to attach the residual value of the license after payment to the debtors' trade creditors. In support of their contentions, the trade creditors cite a string of Ninth Circuit authority beginning with *United States v. California*, 281 F.2d 726 (9th Cir.1960).

We reject the trade creditors' argument that the state of Alaska may validly impose conditions on transferability which reserve an interest not in itself, but in favor of a class of trade creditors. *See In re Leslie*, 520 F.2d 761, 763 (9th Cir.1975) ("[W]hile a

---

1. The BAP came to this conclusion when it improperly relied on state law. The Supreme Court in *Bess* made clear, however, that federal law is to be used to determine the consequences of the attachment of a federal lien to property held by the debtor. 357 U.S. at 55, 78 S.Ct. at 1057; *see also Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960) ("[O]nce the [federal] tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' "); *United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955) ("The relative priority of the lien of the United States for unpaid taxes is … always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court.") Citing *Queen of the North*, 582 P.2d at 149, the panel used Alaska law to conclude that the federal tax lien attached only to the debtors' right to petition the ABC Board for transfer of the liquor license.

state, as the creator of a liquor license, may validly impose conditions on its transferability for the state's own benefit, it may not, consistently with paramount federal law, impose conditions which discriminate in favor of particular classes of creditors."). We agree with the IRS that in this case "state law has been used to create in a creditor other than the State, a property interest that would limit the property subject to a federal tax lien." The cases relied on by the trade creditors do not reach the issue presented here and are factually distinguishable from this case. Furthermore, Alaska's statutory conditions for the transferability of a liquor license invalidly establish a property interest in trade creditors that violates the supremacy of a federal tax lien under federal law.

In *United States v. California*, we held that California had a right to reserve to itself payment of state taxes as a statutory condition for the transfer of a state-created liquor license. 281 F.2d at 728. We concluded that the state's statutory scheme was not in violation of the "paramount right of the United States to levy and collect taxes pursuant to Article I, § 8, of the United States Constitution," even though the scheme's effect was to subordinate the federal tax lien. *Id.* at 727. We reasoned that the issue was not the supremacy of the federal tax lien but the nature of the property to which the lien attached.

> [T]he license existed because the state had issued it. If the licensee acquired something of value, it was because the state had bestowed it upon him. Whatever value the license, as property, may have had to a purchaser depended upon its transferability. If it was transferable, it was because the state had made it so. If the state had seen fit to impose conditions upon issuance or upon transfer of property it has wholly created, that is the state's prerogative so long as its demands are not arbitrary or discriminatory.

*Id.* at 728. Thus, because California had required that state taxes be paid before transfer of the liquor license, the interest in property to which the federal lien attached was the residual value of the prop-

erty after the state taxes were paid. *Id.* Consistent with our holding in *United States v. California*, we agree that the state of Alaska, here, had the right to reserve to itself payment of delinquent state and local taxes, such that the delinquent taxes owed to the Municipality of Anchorage are entitled to first priority from the proceeds of the sale of the Kimuras' liquor license. *See also Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) and *Hyde v. Woods*, 94 U.S. 523, 24 L.Ed. 264 (1876) (holding that because stock exchanges created property interest in seats on exchanges, they could reserve unto themselves the right to be paid first any debts owed them from proceeds received upon sale of seats).

We followed *United States v. California* in *In re Professional Bar Co.*, 537 F.2d at 340 and *California State Bd. of Equalization v. Brink (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1403 (9th Cir.1986), where we affirmed California's right to reserve to itself the payment of state taxes ahead of the claims of other creditors upon the liquor license. We reasoned that:

> The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer. It is to that limited value that any claims against the estate attach.

*Farmers Markets*, 792 F.2d at 1403 (holding California entitled to payment of taxes before transfer of a liquor license); *accord Professional Bar*, 537 F.2d at 340 (holding California entitled to payment of taxes ahead of wage claimants). Neither of these cases, however, involved a federal tax lien or a preference for third-party creditors. *See Professional Bar*, 537 F.2d at 340 n. 2 ("Limitation of the value of state-created property on behalf of the state itself (and not private creditors) does not interfere with or frustrate federal bankruptcy law."). Therefore, they cannot be read for the broader proposition that the state can reserve any interest it sees fit, to the detriment of the federal government.

In *Artus v. Alaska Dept. of Labor (In re Anchorage Int'l Inn, Inc.)*, 718 F.2d 1446, 1447 (9th Cir.1983), we considered whether Alaska's statutory requirement that trade creditors be paid before transfer of a liquor license was preempted by federal bankruptcy law. We held that "[n]o statutory bankruptcy policy forbids [Alaska] from giving one creditor a greater right to payment of his claim from a given asset than that conferred on another." *Id.* at 1451. The case, though, did not construe federal law involving competing claims as against a federal tax lien.

Ninth Circuit case law thus does not support the proposition that Alaska may validly reserve to trade creditors the right to be paid ahead of a federal tax lien. Although it is true that Alaska may re-serve a property interest to itself to be paid before transfer of a liquor license, it may not reserve the same property interest in third parties and thereby subordinate the federal tax lien. We therefore hold that the federal tax lien in this case attached to the proceeds from the transfer of the Kimuras' liquor license.

■ Having determined the interest to which the federal tax lien attaches, we must choose between the competing claims before us. Under federal law, when a federal tax lien and a state law lien compete, priority is determined by the general rule that "the first in time is the first in right." *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). There is no claim by the competing trade creditors that they are entitled under federal law to priority over the federal tax lien which was noticed almost one year before the Kimuras' filed for bankruptcy.[2] Indeed, the trade creditors could not assert an interest in the liquor license until the transfer of the license was sought by the

bankruptcy trustee. Therefore, the federal tax lien is entitled to priority.

Consequently, applying federal law, we hold that the priority Alaska reserved to third party trade creditors, pursuant to Alaska Stat. § 04.11.360(4), over a prior federal tax lien is invalid and unenforceable. *New Britain*, 347 U.S. at 85, 74 S.Ct. at 370. Because we hold that Alaska Stat. § 04.11.360(4) creates no property interest in third persons insofar as federal tax liens are concerned, we must reverse the contrary ruling of the BAP in this case and overrule *Stone v. Alaska Dept. of Revenue (In re Stone)*, 121 B.R. 25 (Bankr.D.Alaska 1990), on this point.[3]

III. Alleged Waiver by the IRS of its Right to Priority Payment of the Proceeds.

■ Finally, the trade creditors argue that the IRS has waived its right to the proceeds of the sale of the liquor license because it did not notify the trade creditors that it planned to assert a right to all of the proceeds, after payment of state taxes and the sales commission. The trade creditors allege that the trustee's application to sell the liquor license included within it the proposed distribution of the proceeds after sale.

■ Simply stated, the record does not support the allegations of the trade creditors. The trustee's application to sell the liquor license did not establish either a proposed or a final distribution of the proceeds following the sale. The application to sell by the trustee and the subsequent amended order of the bankruptcy court established that all liens and encumbrances on the liquor license were to be transferred to the proceeds. It was subsequent to the sale, when the trustee filed its notice of final accounting, that the trustee proposed

---

**2.** Because there is no claim to priority under federal law by the trade creditors, we need not discuss the additional requirements the trade creditors would have to meet in order to defeat the priority of a federal tax lien.

**3.** *Stone* held that "[t]he state of Alaska can legitimately create procedures governing transferability of liquor licenses, barring transfer unless

trade creditors of the liquor establishment are paid. While this may have the effect of altering priorities in payment of creditors in both bankruptcy and in relation to federal tax liens, this is a valid exercise of the state of Alaska's authority." *Id.* at 27. Insofar as *Stone* relates to altering priorities in relation to federal tax liens, *Stone* is overruled.

a distribution of the proceeds. At this time, the IRS objected. We agree with the IRS that it was not required to notify the trade creditors of its position with regard to the distribution of the proceeds in advance. Because the IRS had no duty to object at any proceeding prior to the proposed distribution of the proceeds, the IRS did not waive its right to maintain that it held a priority position to the remainder of the proceeds, after state taxes were paid.[4]

## CONCLUSION

The ruling of the BAP is reversed and the cause is remanded to the bankruptcy court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

**4.** Amicus State of Alaska argues additionally that because the state was operating in its "core" power, under section 2 of the Twenty–First Amendment of the Constitution, it retained power to implement laws governing the transfer of a liquor license, despite the existence of a prior federal tax lien.

We find this argument unpersuasive. Fundamentally, this case does not concern regulation of liquor. The issue involves the primacy of a federal tax lien over a state license. That the license happens to regulate a liquor establishment is purely coincidental and does not effect our substantive analysis. Nor does our decision impinge on the State's ability to regulate the delivery or sale of liquor (as opposed to licenses) in the state.