8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
STATE OF ALASKA; Alaska Alcoholic Beverage Control Board;
City & Borough of Juneau; Alaska Distributors;
Odom Corporation; Alaska Hotel &
Restaurant Employee Trust
Funds, Defendants-Appellees.
 No. 91-36247.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 3, 1993.
Decided Sept. 30, 1993.
 
 Before: SCHROEDER, FLETCHER and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States seeks to quiet title to an Alaska liquor license it purchased at a federal tax sale and seeks an injunction ordering the Alaska Alcoholic Beverage Control Board ("ABC") to transfer the license to the successful bidder at a later sale conducted by the IRS. The district court rescinded the sale, holding that the ABC could properly deny the transfer. For the reasons set forth below, we affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Marcelo and Nancy Quinto operated a bar in Juneau, Alaska known as the Office Lounge. The Quintos held an Alaska liquor license. In 1985 and 1986, the Quintos became delinquent in the payment of taxes arising from the operation of the Office Lounge, including federal and state employment taxes and sales and property taxes assessed by the City and Borough of Juneau. On July 28, 1986, Juneau recorded a notice of tax lien against the Quintos in the amount of $24,854.22. On September 29, 1986, the IRS assessed delinquent taxes against the Quintos totalling $14,389.94, thus creating a federal tax lien that attached to all of the Quintos' property. See 26 U.S.C. §§ 6321, 6322. The United States recorded its lien on September 30, 1986. On that same day, it levied upon the Quintos' property, seizing, inter alia, the liquor license.
 
 
 4
 The IRS published notice that it would sell the liquor license by sealed bid on November 20, 1986. The IRS was the only bidder at the sale, purchasing the license for $14,827.43. The record reflects that the proceeds of the sale were applied (the amount of the IRS bid apparently was credited) to satisfy fully the Quintos' federal tax liability. The Quintos filed for bankruptcy in December 1986.
 
 
 5
 On September 30, 1987, after published notice, the IRS auctioned the license. The highest bid, from John W. Henry and Ira W. Rosen on behalf of Wayne Entertainment, Inc., was for $20,500. A certificate of sale was executed by the IRS, transferring "all right, title, and interest of the United States" in the license to Henry and Rosen. (Certified Record 32, Branman Decl. ex. I.)
 
 
 6
 In January 1988, the IRS applied to the ABC to transfer the license to Wayne Entertainment. Pursuant to Alaska Stat. § 04.11.470, several creditors of the Office Lounge, including the State of Alaska and the City and Borough of Juneau, filed objections to the transfer. Under the Alaska statutory scheme, the ABC will deny an application to transfer a liquor license if
 
 
 7
 the transferor has not paid all debts or taxes arising from the conduct of the business licensed ... unless
 
 
 8
 (A) the transferor gives security for the payment of the debts or taxes satisfactory to the creditor or taxing authority; or
 
 
 9
 (B) the transfer is pursuant to a promise given as collateral by the transferor to the transferee in the course of an earlier transfer of the license under which promise the transferor is obliged to transfer back to the transferee in the event of default in payment for property conveyed as part of the earlier transfer of the license[.]
 
 
 10
 Alaska Stat. § 04.11.360(4).
 
 
 11
 On April 14, 1988, the ABC denied the IRS's application to transfer ownership of the license, citing as its reasons: 1) the Quintos' bankruptcy; 2) a previous owner's petition to have the license transferred back to herself pursuant to Alaska Stat. 04.11.360(4)(B); and 3) the objections, or "holds," filed by the State of Alaska, the City and Borough of Juneau, and other unsatisfied creditors.
 
 
 12
 On November 27, 1989, the United States filed this suit seeking a determination that it has "an interest sufficient to transfer the license to Wayne Entertainment, Inc." and that none of the defendants other than the State of Alaska may assert any right, title or interest in the license. The United States also seeks an injunction requiring the ABC to transfer the liquor license to Wayne Entertainment.
 
 
 13
 On June 14, 1991, the district court granted summary judgment in favor or the City and Borough of Juneau, denying the other parties' motions for summary judgment. The court held that the restriction on the transfer of liquor licenses embodied in Alaska Stat. § 04.11.360(4) was a proper exercise of state power, and that the IRS could "acquire or transfer its interest in the license only upon satisfaction of creditors' claims." (Excerpts of Record at 18.).[1] Upon a motion for reconsideration by the State of Alaska, the court further ordered that the sale of the license to Wayne Entertainment be rescinded.
 
 
 14
 This appeal by the United States followed.
 
 DISCUSSION
 
 15
 The United States maintains that it is entitled, as a matter of federal law, to sell the liquor license to Wayne Entertainment in order to "satisfy the federal tax lien."[2]
 
 
 16
 In United States v. Battley (In re Kimura), 969 F.2d 806 (9th Cir.1992), another case involving Alaska's liquor license transfer provisions, we held that, notwithstanding the presence of a federal tax lien, Alaska was entitled to "reserve to itself payment of delinquent state or local taxes" from the proceeds of a liquor license transfer. Id. at 812; accord United States v. Stone (In re Stone), No. 91-36338, slip op. 10349, 10355 (9th Cir. Sept. 22, 1993). In so holding, we noted that the interest in property to which a federal lien attaches is the "residual" value of the property after such state and local taxes are paid. Kimura, 969 F.2d at 812; Stone, slip op. at 10355. Thus, in the instant case, when the IRS acquired the license by sealed bid at the first tax sale, whatever it acquired was subject to the State of Alaska's and Juneau's property interests in the taxes owed them.
 
 
 17
 Under Kimura, the State of Alaska and City and Borough of Juneau are entitled to assert their interests in the license through the state statutory scheme.[3] The sale was properly rescinded.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court also ruled on the priority of the claims. However, it subsequently vacated this portion of its opinion
 
 
 [2]
 One problem with appellant's position is that the United States no longer has an interest in the license other than as its owner. When the IRS purchased the license and applied the sale price to satisfy the Quintos' tax liability, the federal tax lien was extinguished. 26 U.S.C. § 6322 ("Unless another date is specifically fixed by law, the [tax] lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time.")
 
 
 [3]
 The district court did not have the benefit of our recent decision in Kimura when it ruled on the summary judgment motions in this case. In upholding Juneau's right to enforce its interest in the license, we note that the district court's rationale for its grant of summary judgment to Juneau conflicts to some extent with our holding in Kimura that Alaska may not validly reserve to third-party trade creditors the right to be paid ahead of a federal tax lien. 969 F.2d at 813